HEARD NOV. TERM, 1871.

## McKee *vs.* Mobley.

The father of a store keeper, who died insolvent and intestate, leaving a stock of goods in his store, took possession of the store, and, for a year and upwards, sold the goods at retail, and during this period replenished the stock with other goods purchased with his own money. He then administered on the estate, and by leave of the Or-dinary, sold the goods on hand at public sale. Under a creditor's bill to settle up the estate, in which the account was taken as in cases of regular adminis-tration: *Held,* (1) That the administrator was not entitled to credit for the sum advanced by him in the purchase of goods; (2) that he had not, by reason of a supposed confusion of goods, forfeited all right to compensation for such advance; and (3) that he should be allowed to show what benefit the estate derived therefrom, and be allowed credit on his account for the amount of such benefit.

Where a father permits his son to enter upon the father's land and put valuable im-provements thereon, and by long possession to acquire title, he has no right, as against the son or his estate, to payment of the value of the land as it stood when the son took possession.

Before THOMAS, J., at Chester, September Term, 1869.

This case was heard on exceptions to the report of a Referee. So much of the report as relates to the questions made by the appeal is as follows:

This suit was instituted for the purpose of marshalling the assets

of John McKee, Jr., deceased.   In the course of proceedings orders
have been made for sale of the real estate of intestate; for calling
in the creditors of intestate; for making up the accounts of com-
plainant as administrator, and to take testimony as to what com-
pensation complainant is entitled to for the lot on which the dwell-
ing of intestate was built.

A portion of the real estate has been sold, and report thereof
made and confirmed.   The creditors have been called in and report
thereon made, so that the only matters referred and yet undisposed
of, is an accounting by the complainant for his administration, and to
take testimony as to the value of the said lot.

Upon these matters several references have been held.   A state-
ment of the accounts of the complainant, made up from the testi-
mony, and from admissions of counsel, is hereto annexed, showing
a balance against the complainant on 1st September, 1869, of
two thousand nine hundred and seventy-four dollars and thirty
cents.

The complainant made two points, which were stoutly contested
by the creditors.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Second.  Complainant alleged that since the death of his son and
intestate, he has invested the sum of $1,412 of his own private
funds in carrying on the store owned by his son, and claims that
that sum shall be first restored to him out of the proceeds of sale.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

In regard to the second point made by plaintiff's counsel, the
equity is not so clear.  From the evidence it appears that John McKee,
Jr., died in February, 1866; that very soon thereafter the com-
plainant took possession of the store without inventory and appraise-
ment thereof, and proceeded to sell the goods, as demand was made
for them in the usual course of business, and to buy other goods as
he had means, or the deficiencies in his stock made necessary,
and to conduct the business very much as if it were his own, till
August or September, 1867, when he took out letters of adminis-
tration on the estate of his son.   In this interval of time, be-
tween the death of his son, intestate, and the suing out of letters
of administration, the plaintiff alleges he advanced from his private
means, the sum of $1,412, to pay for goods that were put into this
store and mixed up with goods he found there, or which he had
bought with funds belonging to his intestate, and introduced after
his son's death.  This allegation is not controverted or questioned.

It is an understood fact. He claims that this sum shall be refunded to him from the proceeds of the goods.

The complainant has furnished no statement of the value and character of the goods on hand, at his son's death, nor of the profit realized from sales thereafter. He has conducted the business for a period of sixteen or eighteen months, without reference to the rights of creditors, and in total disregard of the well known laws for administering estates of deceased persons. The stock on hand on the 30th of September, 1867, was sold at auction, and by far the greater portion bought in by the plaintiff. A stock of goods is seldom thrown upon the market of a small town, to be disposed of at.auction, without suffering losses on the original cost. No evidence has been offered to show whether there was a profit or a loss at the sale; nor what profit or loss was sustained upon the goods purchased with the $1,412. The plaintiff has unadvisably mixed up his own goods and moneys with those of his intestate, and he furnishes no testimony or rule by which the separation may be effected, without doing injustice to the creditors of his intestate. While admitting that the plaintiff has equity on his side in this claim, yet, because of his inability to ascertain what is justice under the circumstances, the Referee feels compelled to apply the rule laid down by Blackstone, (2 Vol., 405,) and disallow the claim.

The following facts seem to have been established by the evidence offered, as to what compensation plaintiff should receive for the lot on which his son had erected his dwelling, to wit: That plaintiff never made a formal conveyance thereof to his son; that his son claimed the lot as his for many years before he built thereon, and bought other real estate adjoining it, evidently with the purpose of occupying the lot as his own; that he put up a fine dwelling on the lot with the plaintiff's knowledge, and without any prohibitory injunction from him; that the son lived in this dwelling and occupied these premises, up to the time of his death, without hindrance on the part of plaintiff, and as if it were his own property. The public, and the creditors of the intestate, under these circumstances, might well conclude that the lot was a paternal gift or advancement, although no formal conveyance was made. As between the father and son, this could not probably be regarded as a gift. But creditors stand on a higher footing. It is impossible to say what credit has been extended to the intestate, by means of his possession of this property, and his exercising over it the rights of owner, nor, consequently, how much injustice might be done by allowing the

parent to resume his proprietory right and exclude the creditors from all benefit therein. The public and creditors may have been deluded by these acts of both parent and son, and the law will not allow the father to take advantage of his own wrong. The Referee, therefore, declines to recommend that plaintiff shall receive any compensation for said lot, unless the other property of the intestate shall be sufficient to pay all of his debts.

The complainant excepted to the report. The second and third exceptions being as follows:

2. Because the Referee has not allowed complainant the sum of fourteen hundred and twelve dollars, ($1,412,) which complainant put in and laid out, in the purchase of goods in the store lately occupied by John McKee, Jr., deceased, which increased the amount of sales made by complainant, before he made a public sale of the contents of said store, by order of the Ordinary. The Referee, alleging that the $1,412 was a mixture of goods or money of complainant with the goods in the store occupied by said deceased, when the complainant insists and alleges the amount of money was fully ascertained and known, and did not come under the law of admixture, goods, &c., and complainant should have been allowed a credit for the said $1,412.

3. Because the Referee has decided that the complainant should not be allowed any compensation for the lot of land on which John McKee, Jr., had built, on the ground that complainant, as the father of deceased, has stood by and seen him build on the lot, and taken no active measures to assert title in himself, when there was no proof that the complainant had given said lot to his son; no titles were ever made to the same, and no possession by the Statute of Limitation, amounting to titles, when the proof was positive that there had been no right or titles, the law of the land requiring ten years' possession to consummate the titles of deceased; the law making no distinction between father and son than the stranger; and as complainant had been willing to receive a compensation for his interest in said lot, and waive the titles and claims, the Referee should have allowed a reasonable sum therefor.

His Honor sustained the second and third exceptions, and made an order recommitting the report to the Referee, and directing him to allow the plaintiff credit on his account for $1,412, the amount claimed by the second exception, and also to allow him $750, the value of the lot mentioned in the third exception.

The Referee having amended his report so as to make the same conform to the above stated directions, the report, as amended, was confirmed at November Term, 1870, and made the decree of the Court.

Some of the defendants, creditors of the intestate, appealed, on the grounds:

1. Because the complainant officiously and without legal authority intermingled merchandise purchased with his own money with the goods of his intestate, thereby making such a confusion of goods that they could not be distinguished, separated or valued, and this confusion being the result of the wrongful and unlawful act of the complainant alone, the whole stock of goods should be regarded as the stock of his intestate.

2. If the complainant is entitled to any remuneration for the goods so unlawfully intermingled by him with the goods of his intestate, he should be required to set forth and prove the value of the goods of his intestate, at the time of said intermingling, so that any loss or depreciation in the value thereof should fall upon both parties *pro rata*, and not that the whole loss should fall upon the innocent party.

3. That the intestate having claimed the lot where he resided for ten or fifteen years, and having, with the acquiescence of the complainant, made large and valuable improvements upon it, thereby giving out to the world that he was the absolute proprietor thereof, it would be a fraud upon the creditors of the said intestate, if his father should now be allowed to come in and receive the value thereof from his insolvent estate.

4. If the complainant has any right to said lot, it consists in his reclaiming and getting possession thereof, upon payment of the amount expended by his intestate in improvements thereon.

5. If the complainant is entitled to any remuneration for the said lot, the amount allowed is excessive, and against the weight of testimony, as two disinterested witnesses (who also were the witnesses of complainant) testified that the lot was not worth more than $500, whilst there was no witnesses, (except the complainant himself) who proved a greater value.

*Hemphill, McAliley* and *Brawley,* for appellants, cited on first and second grounds of appeal, 2 Black. Com., 405; John. Ch. R., 108— *Hart* vs. *Ten Eych;* 15 Vesey, 442; 2 Kent Com., 364, 365. On third ground: Story Eq., § 384, 385, 387, 388; Note to § 385; 1 John.

C. R., 354—*Wendell* vs. *Van Rensselaer*. On fourth ground, Story Eq., § 385, 388.

*Williams*, for appellees cited on first ground : 15 Vesey, 432— *Lumpton* vs. *White*; *Parton* vs. *Parton*, 439, 15 Vesey; and on fourth ground, *Edney* vs. *Whaley*, 1 Rich. Eq., 301.

March 16, 1872. The opinion of the Court was delivered by

WILLARD, A. J. The complainant, the father of intestate, at the death of his son, took possession of a store and a stock of goods belonging to the estate of his son, without authority of law, and carried on the business, selling and buying goods, and dealing with the property as owner. It was not until about a year from the death of intestate, that he sought for and obtained letters of administration on the estate of intestate. Subsequently the stock of goods was sold, under an order of the Ordinary. Complainant now claims that, in an accounting as administrator, he should be allowed, as a credit, as against the amount chargeable to him, as the proceeds of such sale, the sum of $1,412, alleged to have been advanced by him while conducting the business, for the purchase of goods in addition to such stock.

The Referee disallowed this claim wholly on the ground that " the plaintiff has unadvisably mixed up his own goods and moneys with those of his intestate, and he furnishes no testimony or rule, by which the separation may be effected, without doing injustice to the creditors of his intestate." He applies to the case the doctrine applicable to a *confusion of goods*, citing the authority of Blackstone, (2 Vol., 405.) The decree of the Circuit Court sustains an exception to the ruling of the Referee, and allows the claim of $1,412, without diminution, directing the accounts to be recast, in that respect.

It is clear that the view of the Circuit Court was wrong. The stock of goods was sold at public auction, and it is not to be assumed that it brought an amount equal to the first cost of the goods. If the administrator is entitled to an allowance, it must be upon the ground that the estate has been benefitted by the advance of his money.— *Welsh* vs. *Davis*, ante, p. 110 ; *Magwood* vs. *Johnson*, 1 Hill, 228. It is clear that we cannot assume that the estate has been benefitted to the extent of the amount thus advanced. The decree of the Circuit Court, on this report, cannot be sustained, unless the amount so advanced affords the legal measure of the benefit sus-

tained, and as this proposition is unsound, the decree cannot stand.

Nor can the view of the Referee stand without modification.

The principle on which the accounting was conducted was that of debiting the administrator with the amounts realized from the sale of the stock of goods, both at public and private sale, and with interest, against which are placed amounts properly standing to his credit as administrator. The entire stock of goods, including that part purchased with the money advanced by complainant, was sold under an order of the Ordinary, as the goods of the intestate, and the whole proceeds of the sale debited against the administrator. To this course of proceeding, the complainant brings before us no exception under which we can review its correctness, nor do the defendants ask that the accounting be conducted on the basis of regarding the complainant's possession of, and interference with the assets, prior to administration, as tortious. The objection made by complainant's second exception to the Referee's report, proceeded on the ground that the sum of $1,412 advanced by him should have been placed on the credit side of the account, not that the amount debited as the proceeds of sale should be reduced by that sum. We are compelled to assume that the parties are satisfied with the principle on which the accounting was conducted, as no exception is before us calling that principle in question. We must, therefore, treat the case as one of an advance, in .character of administrator, towards keeping up the stock, and carrying on the business of the intestate, and determine upon what principle an allowance should be made to him, if any is proper under the circumstances of the case.

It is clear that the principle governing a wrongful confusion of goods is not directly applicable to the case. This principle is stated by Lord Elden in *Lupton* vs. *White*, (15 Ves., 432,) as follows: "If one man mixes his corn or flour with that of another, and they are of equal value, the latter must have the given quantity; but if articles of different values are mixed, producing a third value, the aggregate of both, and if, through the fault of the person mixing them, the other party cannot tell what was the original value of the property, he must have the whole."

If the complainant was before us resisting an order for the sale of the goods in question, as the proper goods of the intestate, on the ground that such order included his individual property, not subject to such sale, it might be a question how far such claim was affected by the principle just stated; but after such order of sale

has been made, and assented to, and the goods sold by the administrator, as the proper goods of the intestate, and after the proceeds of sale have been carried into the debit side of the account, it is too late to raise any question as to the title to the goods purchased with complainant's advance.

It may well be questioned, whether a Court, in the exercise of equitable jurisdiction, will go farther than Lord Elden went in *Lupton* vs. *White*, in the direction of applying this principle. In that case, one who was bound to account for the mineral produced from a lead mine, wrongfully suffered such mineral to become inseparably commingled with property of his own of a like nature. It was as strong a case for the application of the doctrine applicable to the wrongful confusion of goods, as can be well supposed, and the extent to which the Lord Chancellor went, was to charge the party in fault, in the first instance, with the value of the whole property thus commingled, and to leave the defendant to make such proof as he might of the value of his own property, so as to reduce this primary charge. That case involved the idea that one bound to render a clear account, who has wrongfully defeated the possibility of the taking of such account, may be charged with a gross sum, reasonably assumed as a basis of accounting, and be compelled to discharge himself therefrom. In *Lupton* vs. *White*, this basis was arrived at, on a principle assimilated to the common law doctrine as to a confusion of goods.

It is clear that the common law doctrine, above stated, cannot be applied in a Court administering equity, and in a matter of accounting, as a ground of forfeiture, apart from such influence as it ought to have in controlling the application of the ordinary rules governing the taking of accounts. In this respect, the Referee lays down a rule inconsistent with the nature of the accounting before him.

In view of the principle of accounting mutually assented to in this case, the proper course would have been to allow the complainant to show, that the estate of his intestate had derived benefit from an advance made by him, in the course of administering, and to show the extent of such benefit. This should be clearly shown, or the administrator would not be entitled to the allowance.

The third exception of complainant to the Referee's report, involved a claim, on the part of the complainant, of a credit arising out of the following facts. Many years before the death of J. McKee, the intestate, the complainant, his father, allowed him to occupy a lot of his land. He took possession of the lot, and exercised acts

of ownership thereon, and erected a valuable building, and at the time of his death had so held and occupied the lot and improvements for many years, though without a conveyance to him. The decree of the Circuit Court allowed the matter of this exception, giving a credit to the complainant of $750, as the value of the lot.

The question of the title to this lot is not involved in the present aspect of the case, as it would appear either to have been actually sold under an order for the sale of intestate's real estate, or to be bound by such order, nor is any appeal from such order before us. The only question is, whether the complainant is entitled to an allowance of the value of the lot in question, exclusive of the improvements. No promise or assumption on the part of the intestate is shown as the foundation of this claim.

It was held in *Edings* vs. *Whaley*, (1 Rich. Eq., 301,) that land occupied by a child, with the assent of his parent, without a deed of conveyance, cannot be regarded as a parental gift, though the rule is otherwise with regard to personal property. In that case it was also held that the statute of limitations might run, as between parent and child, so as to make a complete title by lapse of time. It is not made clear, by the evidence, when the exclusive occupation of the lot in question, by the intestate, commenced, although the evidence makes it probable that the full statute period had elapsed prior to the death of the intestate. It is not necessary to rest the case upon proof of an adverse possession for the statutory term. Nor is it necessary to decide whether the fact, that the complainant stood by and allowed his son to make valuable improvements upon the premises would, in equity, characterize the transaction as a parental gift. The present controversy is between the administrator and the creditors of the intestate, and whatever equity the complainant may assert must be considered in its bearing upon the legal and equitable rights of the creditors. The complainant, as administrator, has treated the lot in question as the property of the intestate, and allowed it to become affected by the order for the sale of the intestate. If he has a right to an allowance of the value of the lot, that claim did not exist, in the specific form in which it is now advanced, prior to the death of the intestate, but arises from the fact that the complainant has abandoned a right of entry and damages in favor of the estate.

The complainant has no equity which he is entitled to set up as superior to that of the creditors of the intestate.

They had a right to assume, from the ostensible ownership of the intestate, that he held title, and must be regarded as having given him credit on the strength of such representation. The creditors not only have the superior equity, but, as the assets in the hands of the Court are legal assets, the creditor must be regarded as having the better right, both legal and equitable. The decree of the Circuit Court should be reversed, the cause remanded, and the report of the Referee affirmed and established, except as to the matters embraced in the second exception of complainant to the report, which exception should be sustained to the extent ,of allowing a further reference to ascertain whether any, and if any, what benefit was derived by the intestate's estate from the advance of $1,412 made by the complainant in the purchase of goods, by way of addition to the stock in trade of the intestate, and the complainant should have a credit in account for the amount of any such benefit ascertained to have been derived therefrom.

*Wright*, A. J., concurred.
*Moses*, C. J., absent at the hearing.